IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RONALD DEMARCO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 0121 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | Magistrate Judge Nan R. Nolan |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Demarco moves to alter or amend the June 5, 2007 judgment under Federal Rule of Civil Procedure 59(e), requesting that the Court reconsider its entry of summary judgment in favor of the Commissioner of Social Security. The Commissioner makes several plausible, even persuasive, arguments in support of the ALJ's finding that DeMarco is not disabled. However, after carefully considering the briefing, the Court concludes that a remand is necessary in this case.

**I.  Standard of Review**

"Rule 59(e) motions offer district courts an opportunity to correct errors that may have crept into the proceeding, before the case leaves the district court for good." Sosebee v. Astrue, 2007 WL 2033738, at * 6 (7th Cir. July 17, 2007). Under Rule 59(e), the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1986).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the Defendant in this action.

## II. Credibility Determination

Demarco first argues that the Court erred in finding that substantial evidence supports the ALJ's credibility determination. The ALJ found that DeMarco's testimony that his impairments precluded him from working was not credible. (R. 35). The ALJ explained that he made this credibility determination in part because DeMarco did not comply with his doctor's recommendation to undergo the RACZ procedure to remove adhesions causing his back pain. (R. 32). In the June 5, 2007 Opinion, this Court stated: "Although the ALJ did not specifically so state, it is obvious from the ALJ's determination that he rejected DeMarco's explanation for his refusal to undergo the [RACZ] procedure." Opinion at 21. The Court went on to find that the ALJ's implicit rejection of DeMarco's explanation for failing to undergo the procedure was supported by substantial evidence in the record. Opinion at 21-22.

DeMarco claims that the ALJ improperly drew a negative inference from the fact that he refused to undergo the RACZ procedure, in violation of SSR 96-7p. At the hearing, the ALJ did investigate DeMarco's reasons for failing to have the adhesions removed. (R. 315-16). DeMarco testified that he did not want to undergo the RACZ technique because "it's a full blown operation" with a six-month recovery and he did not "want to be opened up again." (R. 315-16). DeMarco told Dr. Blas that he did not want to undergo the RACZ procedure because he had a phobia of hospitals and needles. (R. 224). In his decision, the ALJ found:

> [C]laimant failed to follow-up on recommendations by the treating doctor, a non-pursuit of treatment suggesting symptoms have not been as serious as has been alleged in connection with this application and appeal. As discussed earlier in this decision, Dr. Blas has often recommended a procedure to remove the adhesions which were assessed as the cause of claimant's back pain. However, claimant has repeatedly rejected this recommendation and instead chosen to use potent narcotic medications even though he also indicates that they provide little relief and have incapacitating side effects.

(R. 32).

The ALJ could properly rely on DeMarco's non-pursuit of the RACZ treatment in assessing DeMarco's credibility regarding his symptoms as long as he first considered DeMarco's explanations for the non-pursuit of that treatment. The ALJ noted DeMarco's rejection of the RACZ procedure, but DeMarco's reasons for rejecting the procedure were not mentioned in the ALJ's decision. (R. 31, 32). The veracity or adequacy of DeMarco's explanations were not expressly considered in the ALJ's decision despite SSR 97-6p's requirement that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue [] medical treatment without first considering any explanations that the individual may provide . . . that may explain . . . [the] failure to seek medical treatment."

Of course, SSR 96-7p does not require the ALJ to necessarily accept DeMarco's explanation for not undergoing the RACZ procedure but the ALJ had to provide an indication that he considered the reasons why DeMarco refused to undergo the procedure. The ALJ should have minimally articulated his reasoning for rejecting DeMarco's explanations for failing to undergo the RACZ procedure. In the absence of some clearer indication in his decision that the ALJ considered DeMarco's explanations, the Court finds that the ALJ did not adequately comply with SSR 96-7p. Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003) (holding that "[i]n evaluating the credibility of statements support a Social Security application, [the Seventh Circuit has] noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p.").

The Commissioner argues that it was impossible for the ALJ to not consider

DeMarco's reasons for refusing the RACZ procedure because the ALJ referenced DeMarco's hearing testimony and Dr. Blas' office records, which contained conflicting reasons for not undergoing the procedure, in his decision. The Court is not comfortable drawing the inference the Commissioner suggests. While the Commissioner's version is plausible, it is also possible that the ALJ forgot DeMarco's explanations or thought them irrelevant. Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) (stating "[o]ne inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant."). This is why the ALJ must make clear that he considered DeMarco's explanations for not undergoing the RACZ treatment if he draws a negative inference from DeMarco's failure to pursue that procedure.

The other problem is that the ALJ did not indicate in his written decision the basis for apparently rejecting DeMarco's explanations, and the Commissioner cannot supply the reasoning that the ALJ failed to supply. Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). Since the ALJ provided no explanation for his apparent rejection of DeMarco's reasons for not undergoing the RACZ procedure, this Court cannot trace the path of his reasoning on this point. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996) (stating "[w]hile we do not require a written evaluation of every piece of evidence, an ALJ must 'sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'""). On remand, if the ALJ draws a negative inference from DeMarco's failure to undergo the RACZ procedure, he must explain why he discredits DeMarco's explanations that may explain the failure.

DeMarco also challenges this Court's finding that the ALJ implicitly rejected DeMarco's

claim concerning severe and debilitating side effects from his medications. Opinion at 23. SSR 96-7p says that in evaluating the credibility of a claimant's subjective complaints, the ALJ must consider, among other things, the side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. At the hearing, DeMarco testified that he was taking Oxycontin, Celebrex, Valium, Soma compound, and Naproxen. (R. 308). Demarco testified that the Oxycontin blurs his vision, makes it hard for him to walk, and reduces his concentration. (R. 308). Demarco described feeling like a zombie when on Oxycontin and added that he cannot drive when taking it. (R. 309, 317). Demarco stated that the Oxycontin and Valium make him sleepy. (R. 320-21). DeMarco said he takes the Valium with the Oxycontin three to four times a week and then often sleeps two to three hours during the day. (R. 321-22).

In his decision, the ALJ stated, "[d]espite worsening pain and adverse side effects from his prescribed narcotics, [DeMarco] has repeatedly rejected recommendations for a non-operative approach to remove the adhesions." (R. 31). Later in his decision, the ALJ stated that DeMarco has "repeatedly rejected" the RACZ treatment recommendation and "instead chosen to use potent narcotic medications even though he also indicates that they provide little relief and have incapacitating side effects." (R. 32). After making these findings, the ALJ quoted SSR 96-7p, including the portion stating:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as . . . trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

(R. 32-33). In its Opinion, this Court noted that the ALJ considered DeMarco's medication

side effects and implicitly rejected DeMarco's claim of severe and debilitating side effects from his medications. Opinion at 23.

The Court agrees with DeMarco that the ALJ did not specifically articulate his reasons for discounting DeMarco's statements about the side effects of his medications. The Seventh Circuit made clear in Golembiewski that the reasons for a credibility finding may not be implied. Rather, "the ALJ must *specify* the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony." Golembiewski, 322 F.3d at 916. The Commissioner argues that "[i]n light of the ALJ's reference to 96-7p, the ALJ's statement logically references both Plaintiff's symptoms from his back pain and alleged medication side effects." Doc. # 33 at 7. But "logically references" is not the same as "specify[ing] the reasons." Further proceedings are necessary so the ALJ can specifically articulate his reasons if he decides to discredit DeMarco's testimony regarding the side effects from his medications.

In response to DeMarco's challenges, the Commissioner points out that the record shows that on only one occasion did DeMarco report being sleepy from Oxycontin and Zanaflex and as a result, Dr. Blas changed the medication. (R. 226). Again, the problem is that the ALJ's decision gives no indication that the ALJ relied on this fact. This Court cannot affirm the ALJ's decision on reasons not given by the ALJ. Golembiewski, 322 F.3d at 916 (stating "general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (stating that "the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'"). On remand, the ALJ must specifically articulate his reasons for believing or

not believing DeMarco's testimony as to the side effects of his medications.

## III.     RFC Determination

As to DeMarco's RFC, the ALJ found that DeMarco could perform a restricted range of medium work, subject to a need to alternate between sitting and standing and a restriction against more than occasional stooping, crouching, and crawling. "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10.

DeMarco argues that the ALJ failed to comply with the requirements of SSR 96-8p in assessing his RFC. DeMarco's argument is that SSR 96-8p requires an explicit discussion describing why DeMarco's alleged limitations in his abilities to stand and concentrate and his need to sleep for long periods of time during the day could or could not be reasonably accepted as consistent with the evidence. DeMarco reported limitations in his ability to stand (R. 103 - 15 minutes at time; R. 107 - extreme pain if stands for 30 minutes; see also R. 307). DeMarco testified that his medications cause him to sleep two to three hours during the day three to four times a week. (R. 319-22). DeMarco also testified to serious limitations in his ability to concentrate when taking OxyContin. (R. 309, 316-17).

SSR 96-8p requires that the ALJ's RFC assessment "include a discussion why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The ALJ's decision does not meet this standard. See Prince v. Sullivan, 933 F.2d 598, 602 (7th Cir. 1991) (holding Social Security Rulings are binding on all components of the Social Security Administration, including the ALJs). The ALJ provided no narrative discussion of DeMarco's

alleged limitations in his abilities to stand and concentrate and his alleged need to sleep for long periods of time during the day. Even though there may be enough evidence in the record to support the ALJ's apparent rejection of DeMarco's alleged limitations in these areas, the ALJ should have discussed his reasons for discounting DeMarco's allegations. On remand, the ALJ shall comply with the narrative discussion requirements of SSR 96-8p when making his RFC findings, including an explanation of whether DeMarco's allegations regarding limitations in his abilities to walk and concentrate and his need to sleep during the day can or cannot reasonably be accepted as consistent with the medical and other evidence.

## IV. Conclusion

The above collection of errors persuades the Court that it is necessary for the ALJ to reassess DeMarco's credibility and his residual functional capacity. Plaintiff's Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) [29] is granted. The Judgment entered June 5, 2007 is vacated. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed. The Clerk is directed to enter final judgment in favor of the Plaintiff and against the Commissioner in accordance with Rule 58. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**E N T E R:**

*Nan R. Nolan*
_____
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: August 16, 2007**